The **PEOPLE** of the State Of Colorado, Complainant,

v.

Samuel J. **STOORMAN**, Respondent.

No. 04PDJ004.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Sept. 28, 2004.

**OPINION AND ORDER RE: DISMISSAL PURSUANT TO C.R.C.P. 41(b)(1)**

Presiding Officer Douglas D. Piersel and Hearing Board members Marilyn J. David and E. Steven Ezell, both members of the bar, conducted a hearing in this matter on August 30—September 1, 2004. Kim E. Ikeler appeared on behalf of Complainant ("People/Complainant"). Michael Berger appeared on behalf of Respondent Samuel J. Stoorman ("Respondent"), who also was present.

The Hearing Board considered the testimony of witnesses called by Complainant, exhibits admitted into evidence, and the Parties' arguments on the Motion to Dismiss under C.R.C.P. 41(b)(1)(involuntary dismissal) made by Respondent at the conclusion of Complainant's case. The Board concluded Complainant had not met its burden of establishing by clear and convincing evidence that Respondent engaged in fraud or other professional misconduct as charged in the Complaint.

Based on the forgoing, the Hearing Board now issues its decision announced in open court on September 1, 2004 and makes the following written findings:

## I. BACKGROUND

On January 21, 2004, the People of the State of Colorado ("Complainant") filed a complaint against Respondent Samuel J. Stoorman charging him with fraud. Complainant charged Respondent with violating Colo. RPC 3.3(a)(1) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 3.1 (bringing or defending a proceeding when there is no legitimate basis for doing so), and 3.4(c) (disobeying an obligation under the rules of a tribunal).

In the summer of 2000, Rhonda Bell ("Bell") hired Respondent Samuel Stoorman to represent her in *Bell v. Reivas,* an action against her former live-in partner. Bell was suing her former partner because he would not compensate her for an interest in a house she claimed the couple jointly owned. The case was tried in Jefferson County District Court on August 7–9, 2000. Judgment was entered for Bell for $41,442. The attorney fees and costs incurred by Bell exceeded the judgment. Respondent asked Bell to execute an assignment of the judgment to Respondent's firm, Stoorman and Friednash. Bell executed an assignment but claims to have later revoked it. Reivas then paid to Respondent's firm the money on the judgment pursuant to the assignment.

On September 21, 2000, Bell filed a Chapter 7 bankruptcy proceeding. The bankruptcy trustee demanded that Respondent turn over the fees the firm had collected in the *Bell* case. In the summer of 2001, Respondent told the bankruptcy trustee he had perfected an attorney's lien in Bell's case before she filed bankruptcy that would avoid the trustee's claim to the funds. The bankruptcy trustee initiated an adversary proceeding to collect the funds. The adversary proceeding

was later settled. The discipline proceeding grew from these facts.

Complainant alleges that sometime in the summer of 2001, Respondent created the attorney's lien and backdated it to August 7, 2000 and placed it in the Jefferson County District Court case file in *Bell v. Reivas*. Complainant contends that Respondent relied upon this fraudulent lien to attempt to defeat the claim by the bankruptcy trustee.

Respondent's version of the events is that he instructed his assistant, Loren Daly ("Daly"), to prepare a letter-lien on Thursday August 4, 2000 to be filed on the morning of trial. Daly testified that she prepared the letter-lien the next day, August 5, 2000. The *Bell* matter was scheduled for trial in Jefferson County District Court the following Monday, August 7, 2000.

After the trial in the *Bell* case, Respondent's firm sent Bell a fee statement dated August 9, 2000 for attorneys fees and costs in the amount of $53,142.78. The letter-lien Respondent says he filed on August 7th contains that same amount as owing. The fee statement contains charges for the trial arising after the letter-lien was supposed to have been filed.

On August 30, 2000, Respondent and the firm's associate, Ken Buechler, met with Bell to discuss the fees and the firm's request that she assign the proceeds from the judgment to the firm. Bell executed the assignment on that date, had it notarized, and faxed it to the firm. Bell states she then had a change of heart and faxed a revocation of the assignment the same day. Buechler and Respondent both testified they do not recall ever receiving the revocation. In fact, a few days later Buechler sent a copy of the assignment to the attorney for Reivas with no mention that it's validity was being questioned. It seems unlikely that Buechler would have done so if he were aware of a purported revocation of the assignment. On September 1, 2000, Respondent and Reavis' counsel executed a stipulation regarding the payment of the judgment.

On the morning of August 7, 2000, shortly before the trial was to begin, Respondent claimed to have hand-delivered to Jefferson County District Court staff the letter-lien dated August 7, 2000, expecting it would be date-stamped and filed into the court's record in *Bell v. Reivas*. In the summer of 2001, the letter-lien was located in the court's *Bell v. Reivas* file, stapled to the back of a response submitted by Respondent to a motion in *limine*. The response to the motion was file-stamped August 7, 2000, but the letter-lien was never file-stamped as a separate document nor was it logged in as a separate document by court staff. Respondent testified at the disciplinary hearing that he did not realize until sometime in 2001 that the lien document was attached to the back of another pleading. Respondent also testified he did not know how this happened.

Jeanine Silence was the Jefferson County District Court clerk who actually placed into the *Bell v. Reivas* court file the response to which the letter-lien was later found attached. She testified she logged the response into the court computer system but did not review the document and typically would not know if the letter-lien was attached to the document when she received it.

Respondent testified he decided to file an attorney's lien in Bell's case because he was concerned, based on statements Bell made to him and Buechler, she may need to file bankruptcy. The letter-lien Respondent purportedly filed in the *Bell* case on August 7, 2000 contained a caption with the name and address of Jeanne Jagow ("Jagow"), one of many local U.S. Bankruptcy Court trustees. Her name appears on the letter-lien even though she was not yet appointed Trustee. Respondent claims he was given Jagow's name during a phone call he placed to the Bankruptcy Court before the preparation of the letter-lien. He placed this call to obtain the name of a trustee to whom he could send a copy of the letter-lien before Bell filed for bankruptcy, which he thought prudent. Daly testified Respondent gave her the name and address for Jagow and she was directed to add the information to the letter-lien she prepared on August 5, 2000, which she said she did. Coincidentally, Respondent claims, Jagow was actually appointed the trustee after Bell filed her bankruptcy case on September 21, 2000. Complainant asserts this

can't have been a coincidence and shows the lien was not created until much later.

In November 2000, Jagow wrote to Respondent's firm demanding turnover of the funds the firm received from the *Bell* judgment but she received no response. Jagow sent a follow-up letter to Respondent's firm in June 2001. Respondent quickly replied, explaining he had not received the previous correspondence. He thereafter spoke with Jagow by telephone. He took the position that even if Bell's assignment to the firm of the *Bell* judgment could be voided in the bankruptcy case as a preference, the firm had perfected an attorney's lien pursuant to C.R.S. 12-5-119 by filing a notice with the Jefferson County District Court on August 7, 2000. Respondent followed up with a letter to Jagow citing legal authority in support of his position, but he did not enclose a copy of the letter-lien.

On July 2, 2002, Jagow wrote to Respondent requesting he send her a copy of the August 7, 2000 letter-lien. Respondent sent the document to Jagow on July 3, 2002. On September 17, 2002, Jagow, in her capacity of trustee, brought an adversary proceeding against Respondent. The trustee claimed entitlement under 11 U.S.C. § 549 to avoid the Respondent's firm's lien, as well as its receipt of money from the judgment in the *Bell v. Reivas* case.

Respondent and Jagow settled the adversary proceeding when Respondent's firm turned over to the trustee $37,000 of the fees collected from the *Bell v. Reivas* case. On January 17, 2003, Jagow moved to dismiss the adversary proceeding.

## II. *FINDINGS, ANALYSIS, AND CONCLUSIONS OF LAW*

Respondent has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on May 17, 1982, and is registered upon the official records of the Supreme Court, registration number 11894. He is therefore subject to the jurisdiction of this Court pursuant to C.R.C.P. 251.1(b).

At the conclusion of Complainant's case, Respondent made a motion to dismiss the case under C.R.C.P. 41(b)(1). That provision states:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this section ... operates as an adjudication upon the merits.

■ In *American Guarantee and Liability Ins. Company v. King,* 97 P.3d 161 (Colo. App.2003), the Colorado Court of Appeals explained the criteria a court sitting as the trier of fact must apply to dismiss a case pursuant to C.R.C.P. 41(b)(1). The Court stated:

> Under C.R.C.P. 41(b)(1), the standard is whether judgment in favor of the defendant is justified on the evidence presented, not whether the plaintiff established a prima facie case, *citing Teodonno v. Bachman* 158 Colo. 1, 404 P.2d 284 (1965). Thus, the trial court sitting as trier of fact may determine the facts and render judgment against the plaintiff, *citing Rowe v. Bowers,* 160 Colo. 379, 417 P.2d 503 (1966).

■ In *Teodonno, id* at 285, the Supreme Court clarified the application of Rule 41(b) when a court sits as the trier of fact. There the Court stated: "If reasonable men could differ in the inferences and conclusions to be drawn from the evidence as it stood at the close of the plaintiffs' case, then we cannot interfere with the findings and conclusions of the trial court," *citing Blair v. Blair,* 144 Colo. 442, 357 P.2d 84 (1960); *Niernberg v. Gavin,* 123 Colo. 1, 224 P.2d 215 (1950).

■ Complainant's burden in disciplinary cases against an attorney is proof by clear

and convincing evidence. C.R.C.P. 251.18(d). Clear and convincing evidence is proof persuading the trier of fact that contentions a party seeks to establish are highly probable. *People v. Distel,* 759 P.2d 654 (Colo.1988).

The Hearing Board must therefore decide under C.R.C.P. 41(b)(1) and C.R.C.P. 251.18(d) whether reasonable minds can conclude that Complainant has established the violations of the Code of Professional Conduct with which Respondent is charged at the level of high probability that proof by clear and convincing evidence demands.

The charges against Respondent turn on whether Complainant has established by clear and convincing proof that at a date after learning of the bankruptcy and believed to be in the summer of 2001, Respondent created and backdated the letter-lien and placed it into the Jefferson Count District Court file and thereafter sought to use it to defraud the bankruptcy court. The evidence consists primarily of documents and witness testimony upon which Complainant relies to suggest a compelling inference of Respondent's fraud and related misconduct. The case law makes clear when assessing the quality of evidence there is no difference between direct and circumstantial evidence. *See People v. Bennett,* 183 Colo. 125, 515 P.2d 466, 469 (1973) (same test for measuring sufficiency of evidence applicable whether evidence is direct or circumstantial).

The documentary evidence in this case supports a variety of inferences. The evidence includes: (1) the letter-lien itself, which was not filed stamped on August 7, 2000, the date Respondent claimed to have filed it in the *Bell v. Reivas* case; (2) the reference on the face of the letter-lien to Jeanne Jagow purportedly prepared the month before Bell filed bankruptcy and Jagow's appointment; (3) Jagow's actual appointment as trustee in September 2000; (4) the fact that the letter-lien was stapled to the back of another pleading filed on August 7, 2000; (5) the fact that the letter-lien contains the same amount claimed as owing before trial as the actual billing statement prepared after trial.

Complainant offered the testimony of numerous witnesses, including Respondent's former law partner, Douglas J. Friednash ("Friednash"), his former associate Buechler, opposing counsel in *Bell v. Reivas,* Jefferson County District Court staff, Jeanne Jagow, the trustee appointed in Rhonda Bell's bankruptcy proceedings, and several other witnesses. None of these witnesses could explain through first-hand knowledge how the letter-lien got into the *Bell* Court file attached to another pleading and lacking a separate date stamp.

No witnesses gave testimony, and no documentary evidence was offered, from which the inference could be drawn by clear and convincing proof to support Complainant's theory of the events. Three witnesses, however—Friednash, Jagow, and Bell—testified to facts inferring Respondent committed fraud by backdating the letter-lien and placed it into the Court file.

Friednash testified that when he learned about the bankruptcy trustee's efforts to collect the firm's fees in the *Bell* litigation, he did not recall ever hearing about the lien around the time of the trial. When he learned of the trustee's efforts to recover the fees in the summer of 2001, he went to the Jefferson County District Court, reviewed the file, and found the letter-lien without a separate file stamp but attached to another pleading dated August 7, 2000. Friednash testified when he confronted Respondent, he acted strangely and made vague statements about filing the lien. This confirmed for Friednash his suspicions Respondent had committed fraud and he insisted Respondent remove the lien. Later, Friednash stated, he again went to the Clerk's office to review the file and could not find the letter-lien.

Jagow testified she became suspicious of the authenticity of the letter-lien when she saw for the first time in the summer of 2001 that the lien was dated August 7, 2000 and showed a caption with her name and address on it. The date on the letter-lien preceded Bell's bankruptcy filings and her appointment by two months. Jagow stated she had no other evidence that Respondent backdated the lien and later inserted it into the Court file to gain a preference in Bell's bankruptcy. She also testified that if she had

actually received a copy of the lien prior to her appointment she may very well have paid no attention to it and discarded it.

Bell testified she did not know Respondent had filed an attorney's lien in her case until Jagow told her in the summer of 2001. Thereafter, Bell visited the Jefferson County courthouse, reviewed the file and found the letter-lien, with the reference to Jagow but without a separate file stamp, attached to the response to the motion in *limine*.

The Hearing Board found the testimony of Loren Daly most persuasive. Daly was the only witness with firsthand knowledge of the events related to the creation of the lien. Daly testified that she was instructed to prepare the letter-lien on August 4, 2000 by Respondent. She prepared the letter-lien on August 5, 2000 according to Respondent's instructions, which included adding the name and address of Jeanne Jagow. Her handwritten notes made at the time confirm this account of events. She also testified that she was the one who determined the amount of money to claim in the lien by calculating the fees and costs owed to that time and estimating the additional fees and costs to be incurred during the trial. Respondent states that after trial he adjusted the actual billing statement to equal the lien amount. This evidence lends support to Respondent's version of events about how and when the lien document came into existence. It is not, however, conclusive on the issue of when the letter-lien was filed with the District Court.

Support for the contention that Respondent at least believed he filed the letter-lien sometime during or around the morning of trial is found in a deposit slip with a "Stoorman and Friednash" imprint dated October 24, 2000. On the face of the slip is a deposit dated October 24, 2000 for $32,070.62 referenced to the Bell case with a note, apparently from Respondent to his partner Friednash. The note states: "Doug, FYI. Let's leave alone till we know outcome of lien and assignment. Your thoughts?" From this it appears Respondent believed that he had a valid lien in place at least as of the date of October 24, 2000.

After considering all testimony and other evidence, the Hearing Board concludes that the inferences subject to being drawn from the evidence offered lead to several explanations for the events at issue here, all of which are speculative and perhaps equally plausible, including the one suggested by Respondent. In these circumstances, Complainant has not met the test of "high probability" required to prove by clear and convincing evidence that Respondent committed fraud or otherwise violated the Rules of Professional Conduct as charged.

Accordingly, the Hearing Board GRANTS Respondent's Motion under C.R.C.P. 41(b)(1) and dismisses Case No. 04PDJ004 with prejudice.

### III. *ORDER*

For the reasons set forth above, the Hearing Board herein Orders:

(1) Respondent's Motion for Involuntary Dismissal under C.R.C.P. 41(b)(1) is GRANTED. Case No. 04PDJ004 is dismissed with prejudice.

(2) Costs shall not be assessed against Respondent pursuant to C.R.C.P. 251.32(d)(1).