24CA0631 Brone v Cromer 02-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0631
Boulder County District Court No. 23CV30498
Honorable J. Keith Collins, Judge

---

Lisa Brone,

Plaintiff-Appellant,

v.

Ted Eugene Cromer and Muezetta Elise Cromer,

Defendants-Appellees.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE BERGER*
Dunn and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

---

Pat Mellen Law, LLC, Patricia Ann Mellen, Denver, Colorado, for Plaintiff-Appellant

Lieberman Legal LLC, Chad Liberman, Englewood, Colorado; Stoneman Legal, Todd N. Stoneman, Longmont, Colorado, for Defendants-Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Plaintiff, Dr. Lisa Brone, appeals the trial court's judgment dismissing her claims against defendants, Ted Eugene Cromer and Muezetta Elise Cromer (the Cromers), under C.R.C.P. 41(b)(1). We address each of Dr. Brone's contentions but reject them. Accordingly, we affirm and remand to the trial court to award the Cromers their reasonable appellate attorney fees and costs.

I.     Relevant Facts and Procedural History

¶ 2     In 2015, the Cromers entered into a contract to purchase a single-family home located in Longmont, Colorado (the property). As part of their due diligence, the Cromers hired a certified inspector who examined the property and created an inspection report (2015 Inspection Report). The 2015 Inspection Report identified potential issues with the property and separated these issues into primary concerns and secondary concerns. The 2015 Inspection Report noted as one primary concern that the patio surface abutting the house had settled, and that it sloped toward the property's foundation. The report also identified as a primary concern that the grade around the house needed correction because some areas around the property had a "flat to negative slope,"

which "can cause run-off water to pool at the foundation and concrete flatwork."

¶ 3     The Cromers filed an inspection objection requesting that the sellers address some of the concerns raised in their inspection report, such as the settling of the patio.  However, the sellers declined to address the Cromers' objection to the settling of the patio.  Instead, the Cromers' inspector sent a follow-up email in which he noted that, upon further investigation, he was able to determine the patio "did slope slightly away from the house."

¶ 4     The Cromers closed on the property in December 2015 and resided there as their primary residence.  In 2021, the Cromers began renovating the property in anticipation of selling it.  The Cromers installed a new roof and a new driveway, and they made other interior and exterior improvements and repairs.  They "mudjacked" the patio to address their concerns from the 2015 Inspection Report that the patio had settled.

¶ 5     In July 2021, Dr. Brone contracted with the Cromers to purchase the property.  Dr. Brone received from the Cromers the required "Seller's Property Disclosure" (SPD), a form promulgated by the Colorado Real Estate Commission.  The contract also required

that the Cromers provide Dr. Brone with "any other inspection reports" in their possession; however, the 2015 Inspection Report was not given to Dr. Brone at this time. The Cromers completed the SPD but did not identify any issues concerning the settling of the patio, gaps near the foundation, or areas of potential water intrusion.

¶ 6　　Dr. Brone hired a certified inspector who examined the property and provided an inspection report (2021 Inspection Report). The 2021 Inspection Report identified various issues, such as a missing rain collar, grading of the property, gaps between the foundation and driveway and walkway, and "lot/drainage" issues. The report noted that there was evidence of concrete lifting (mudjacking) of the patio and potential water leaks in the attic. As to these two latter items, the inspector recommended that Dr. Brone consult with the sellers to obtain more information. But Dr. Brone did not contact the Cromers about the lifting of the concrete patio and did not do anything about the potential attic leak.

¶ 7　　In addition to the property inspection, Dr. Brone hired Mold Inspection Services (MIS) to examine the property. MIS collected air samples in the basement and surface samples in the attic, neither

of which indicated any evidence of mold. This was especially important to Dr. Brone, who is susceptible to mold-based illness.

¶ 8    Dr. Brone filed an inspection objection with the Cromers; however, none of her objections related to the grading around the property, the driveway and walkways, or the back patio where the mudjacking had been done. Dr. Brone withdrew all of her inspection objection after receiving a $2,200 credit toward the purchase price. In August 2021, Dr. Brone closed on the property.

¶ 9    Roughly a month after closing, Dr. Brone observed water leaking from a pipe in a bathroom on the property's main floor. Dr. Brone hired a plumber to replace some pipes, which stopped the leak.

¶ 10    In November 2021, Dr. Brone discovered "a significant amount of water on the floor" coming from the basement bathroom. Dr. Brone testified that the water was about one inch deep in the bathroom. After a plumber repaired that problem, Dr. Brone hired a company to evaluate the water damage. In December 2021, Dr. Brone again hired MIS to test the flood-affected areas for mold. MIS found that one wall was still wet from the water discharge.

Consequently, Dr. Brone hired EcoTrek to conduct remediation work.

¶ 11 In June 2022, Dr. Brone noticed that her twenty-year-old washing machine was leaking water. On examination of the area under and surrounding the washing machine, she discovered an area of black staining that she feared might be mold, and she again called MIS to conduct mold testing. This time MIS found mold. Dr. Brone hired EcoTrek for remediation, but because of scheduling problems, EcoTrek did not begin work on the property until August 2022. Over the next year, EcoTrek did remediation work on the property on several occasions. Dr. Brone testified that she spent approximately $216,000 to address the water damage and mold issues.

¶ 12 In July 2023, Dr. Brone filed suit against the Cromers for breach of contract, breach of the duty of good faith and fair dealing, fraudulent misrepresentation, and nondisclosure/concealment. Specifically, Dr. Brone alleged that the Cromers had failed to disclose material information to the contract — such as moisture and water problems, roof leaks, and flooding/drainage issues — that prevented her from obtaining an accurate picture of the

property. She alleged that the failure to disclose adverse material facts breached the Cromers' implied duty of good faith and fair dealing. And she also alleged that the Cromers knowingly concealed or failed to disclose information required under the contract.

¶ 13    The court held a bench trial in March 2024. At the close of Dr. Brone's case, the Cromers moved to dismiss her claims under C.R.C.P. 41(b)(1). Following argument by the parties, the trial court granted the motion and entered judgment in favor of the Cromers.

II.    Applicable Law and Standard of Review

¶ 14    In civil actions tried by a court without a jury, Rule 41(b) permits the defendant to move for a dismissal after the completion of the plaintiff's case "on the ground that upon the facts and the law the plaintiff has shown no right to relief."

¶ 15    When reviewing a motion under Rule 41(b)(1), the trial court must determine "whether judgment in favor of the defendant is justified on the evidence presented, not whether the plaintiff established a prima facie case. Thus, the trial court sitting as trier of fact may determine the facts and render judgment against the

6

plaintiff." *Am. Guarantee & Liab. Ins. Co. v. King*, 97 P.3d 161, 165

(Colo. App. 2003) (citation omitted).  The trial court

> is afforded wide discretion in determining
> whether a motion for dismissal under [Rule]
> 41(b)(1) should be granted.  Its ruling in this
> regard will not be disturbed on appeal in the
> absence of a showing that the findings and
> conclusions of the trial court are so manifestly
> against the weight of the evidence as to compel
> a contrary result.

*Smith v. Weindrop*, 833 P.2d 856, 857 (Colo. App. 1992).  If

reasonable minds could differ over the inferences and conclusions

to be drawn from the plaintiff's evidence, we must defer to the trial

court's findings.  *Colo. Coffee Bean, LLC v. Peaberry Coffee Inc.,* 251

P.3d 9, 25 (Colo. App. 2010).

¶ 16    At the outset, the parties dispute the standard of review that

we must apply.  Dr. Brone contends that this dispute hinges on the

interpretation of an unambiguous written contract; thus, she

argues that we should review the trial court judgment de novo.  On

the other hand, the Cromers assert that because we are reviewing a

court's judgment granting dismissal of claims under Rule 41(b)(1),

the correct standard of review is "whether judgment in favor of

7

defendant is justified on the evidence presented." *Gold Hill Dev. Co., L.P. v. TSG Ski & Golf, LLC*, 2015 COA 177, ¶ 44 (citation omitted).

¶ 17    We agree with the Cromers. Dr. Brone's appellate claims take issue with the trial court's factual findings based on the evidence presented at trial. In essence, Dr. Brone argues that the evidence was insufficient to support the trial court's decision to grant the Cromers' Rule 41(b)(1) motion. But that is not the standard. We afford the trial court broad discretion in determining whether to grant a dismissal under Rule 41(b)(1), and we will not disturb its findings unless they are "so manifestly against the weight of evidence as to compel a contrary result." *Am. Guarantee & Liab. Ins. Co.*, 97 P.3d at 165 (citation omitted).

### III.    Dr. Brone's Claims

¶ 18    On appeal, Dr. Brone contends that the trial court erred by granting the Cromers' Rule 41(b)(1) motion because (1) the plain language of the contract and the Cromers' testimony prove that the Cromers breached the contract; (2) the court failed to make adequate findings of fact on her breach of good faith and fair dealing claim; and (3) the court incorrectly focused on the presence or absence of mold, rather than circumstances that might have

contributed to the growing of mold when analyzing if the Cromers had fraudulently misrepresented or concealed material facts.

¶ 19    Because we conclude that the evidence in the record and reasonable inferences that may be drawn therefrom support the trial court's findings, we reject Dr. Brone's arguments. It makes no difference whether we would have reached a contrary conclusion, as long as the factual findings made by the trial court are supported by competent evidence. *See Lawry v. Palm*, 192 P.3d 550, 558 (Colo. App. 2008) (noting an appellate court may not substitute its conclusions for those of the trial court merely because there may be evidence supporting a different result); *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1384 (Colo. 1994) (reversing the court of appeals because the trial court's findings were supported by the record).

¶ 20    First, Dr. Brone contends that the trial court erred because the plain language of the contract and the Cromers' testimony prove that they breached the contract. Specifically, Dr. Brone argues that the SPD — which required the Cromers to disclose whether certain property conditions "now exist or have . . . ever existed" — failed to disclose significant issues or defects, including the settling of the

9

patio, which permitted water to flow into the property's foundation and likely led to the growth of mold.

¶ 21     To prove a breach of contract, the plaintiff must show (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008). Damages must be traceable to and the direct result of the defendant's contract breach. *See City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 478 (Colo. App. 2003).

¶ 22     Based on the evidence presented at trial, the court concluded that Dr. Brone failed to prove her breach of contract claim. And more specifically, the court found that Dr. Brone had failed to establish that her damages resulted from the Cromers' alleged failure to disclose property defects. In other words, even if the Cromers had failed to disclose required adverse material facts or problems, the court found that Dr. Brone "failed to prove" that any such failure caused the claimed damages.

¶ 23     The causal relationship between a failure of a contracting party to perform in accordance with the contract and the damages

claimed is a quintessential factual question. *H.M.O. Sys., Inc. v. Choicecare Health Servs., Inc.*, 665 P.2d 635, 639 (Colo. App. 1983) (noting that the causal relationship between breach of contract and damages is a matter to be determined by the trier of fact). On this record, we cannot say that the trial court's finding in this regard was not supported by the evidence and reasonable inferences drawn from the record evidence.[1]

¶ 24 At trial, an employee of MIS testified that the company collected air and surface samples from various locations within the property and that, based on their analysis, no evidence of mold was found at the time Dr. Brone purchased the property.

¶ 25 Dr. Brone testified about three separate water leaks at the property — one of which resulted in approximately one inch of water on the basement bathroom floor — that occurred *after* she

---

[1] For this reason, even if we assume, without deciding, that the trial court erroneously focused on the existence or non-existence of mold, rather than the circumstances that could cause mold to grow, the error is harmless because, in the end, the trial court found with record support that Dr. Brone failed to prove that her damages resulted from any actions or inactions of the Cromers. *See* C.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

acquired the property and that were unrelated to defects that the Cromers allegedly failed to disclose. This discharge of water was significant enough to cause at least one bathroom wall to remain wet for several days after the leak was repaired.

¶ 26    The court heard testimony from James Dennison, an expert in mold identification, testing, and remediation scoping. Dennison testified that he was aware of the three water leaks, but that he did not believe any of the three leaks was sufficient to cause the mold damage found at the property. But the trial court was not required to credit this testimony. As with any testimony, lay or expert, the fact finder may accept or reject any part of the testimony. Dennison did, however, acknowledge that it was possible that the leak in the basement bathroom (the one inch water leak) could have resulted in mold growth. He conceded that he did not independently observe the mold or water damage in the house, he did not inspect the foundation to determine if water was leaking into the property, and he based his assumption on the amount of water lost in each leak only on information provided by Dr. Brone. Dennison also notably testified that mold can appear as soon as a couple of days after a water leak.

¶ 27    Evidence was presented at trial showing that there was no known mold issue before Dr. Brone purchased the property and that at least one of the leaks at the property after Dr. Brone took possession could have resulted in mold growth.  Thus, the trial court's finding that Dr. Brone did not prove that the Cromers' alleged nondisclosure was the proximate cause of her damages is supported by the record.  Because "[i]t is the trial court's sole province" — not ours — "to resolve disputed factual issues and to determine witnesses' credibility, the weight to accord testimony, and the inferences to be drawn from the evidence," *In re Estate of Owens*, 2017 COA 53, ¶ 22 (citation omitted), we may not disturb that finding.

¶ 28    Dr. Brone identifies evidence that she contends supports her position and contradicts the trial court's findings of fact.  However, she misunderstands the role of this court on appeal.  While it is true that evidence in the record could support a conclusion different from that of the trial court, where reasonable minds could differ over the inferences and conclusions to be drawn from the evidence at the conclusion of the plaintiff's case, then an appellate court cannot disturb the findings and conclusions of the trial court.

13

*R.A. Reither Constr., Inc. v. Wheatland Rural Elec. Ass'n*, 680 P.2d 1342, 1345 (Colo. App. 1984). Thus, we cannot substitute our view of the facts for that of the trial court.

¶ 29    Next, Dr. Brone contends that the trial court erred by dismissing her breach of good faith and fair dealing claim without making adequate findings of fact. Again, we disagree.

¶ 30    "The covenant of good faith and fair dealing exists in every contract to enforce the reasonable expectations of the parties." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 499 (Colo. 1995). "A party breaches the implied duty of good faith and fair dealing by using the 'discretion conferred by the contract to act dishonestly or to do an act outside of the accepted commercial practices to deprive the other party of the benefit of the contract.'" *Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, 2021 COA 143, ¶ 66 (citation omitted).

¶ 31    Dr. Brone argues that she expected to receive "honest information about everything [the Cromers] knew about the house and what they did to the house," for the Cromers to disclose "everything about the house," and that they would provide accurate and complete disclosures.

¶ 32    However, the implied duty of good faith and fair dealing

applies only "when one party has discretionary authority to

determine certain terms of the contract," and the covenant may be

relied on "only when the manner of performance under a specific

contract term allows for discretion on the part of either party."

*Amoco Oil Co.*, 908 P.2d at 498.  The contract did not provide the

Cromers with any discretionary authority over the documents they

were required to turn over to Dr. Brone; rather, the contract created

a mandatory obligation that the Cromers turn over particular

documents and that they disclose known material facts and defects

to Dr. Brone through completion of the SPD.  Thus, it is unclear

how the duty of good faith and fair dealing creates any obligations

independent of the terms of the contract.

¶ 33    Regardless of the absence of factual findings specific to the

good faith and fair dealing claim in the trial court's ruling, the

court's general findings of fact contain sufficient justification for

dismissing Dr. Brone's claim.  *See In re Marriage of Rozzi*, 190 P.3d

815, 822 (Colo. App. 2008) (noting that a trial court's order must

contain findings of fact and conclusions of law sufficiently explicit

to give an appellate court a clear understanding of the basis of its

15

order and to enable appellate review); *Moeller v. Colo. Real Est. Comm'n*, 759 P.2d 697, 703 (Colo. 1988) ("[T]hough the factual findings of the trial court are brief and undetailed, we are able to determine the basis of the trial court's judgment from its findings and a review of the record.").

¶ 34    Notably, the court concluded that, based on Mr. Cromer's testimony at trial, he had acted reasonably when completing the SPD.[2]  At trial, Mr. Cromer explained how he filled out the SPD, and why he included and excluded certain information.  For example, he said that he did not disclose items in the "cracks, heaving, or settling problems" section of the SPD because the settling observed at the property was "not structural" and was affecting only the "floating concrete slabs."  Mr. Cromer also said that he did not report any drainage issues at the property because he did not have any issues with flooding or drainage while he lived there.

---

[2] We agree with Dr. Brone that the trial court's focus on whether the Cromers' conduct was reasonable was mistaken.  The question was whether the Cromers complied with their contractual obligations, not whether they acted reasonably.  However, this error was harmless in view of the trial court's ultimate finding that the Cromers' actions or inactions did not cause the claimed damages.

¶ 35 The court also found, with record support, that Dr. Brone was aware or put on notice of many of the issues she now claims were not disclosed. On cross-examination, Dr. Brone testified that she was aware of

- the missing rain collar;

- the sloping issues toward the house;

- potential issues with lot drainage;

- evidence of concrete lifting; and

- stains that might be evidence of leaking.

¶ 36 Because the record and the trial court's overall factual findings provide the basis for the trial court's conclusion, the record is sufficient for appellate court review. And because the record supports the court's decision to dismiss the breach of good faith and fair dealing claim, we will not disturb the trial court's order.

17

¶ 37     Lastly, Dr. Brone contends that the trial court erred in dismissing her claims of fraudulent misrepresentation and fraudulent concealment.[3] We discern no error.

¶ 38     To establish a claim of fraudulent concealment, a plaintiff must prove (1) concealment of a material existing fact that in equity or good conscience should be disclosed; (2) the defendant's knowledge that the fact is being concealed; (3) the plaintiff's ignorance of the fact; (4) the defendant's intent that the plaintiff act on the concealed fact; and (5) the plaintiff's action on the concealment resulting in damages. *Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 918 (Colo. App. 1991).

¶ 39     The trial court found that there was no evidence that the property improvements made by the Cromers were done for the purpose of concealing mold, and that the Cromers did not engage in any "false representation or nondisclosure or concealment." Again, evidence in the record supports this finding.

---

[3] On appeal, Dr. Brone states that the trial court erred in dismissing both her fraudulent misrepresentation claim and her fraudulent concealment claim. However, in her analysis, Dr. Brone only develops her arguments as they relate to the issue of fraudulent concealment. Thus, we only address her arguments as they relate to fraudulent concealment.

¶ 40    Mr. Cromer testified that, before the sale, he took a variety of actions to improve and renovate the property. He stated that he painted; replaced flooring, countertops, and the backsplash; installed a new roof and a new driveway; and mudjacked the walkway and patio areas. Mr. Cromer expressly stated that these activities were upgrades to the property to ready the home for sale, and that none of the work was done in response to water damage. He also said that none of the contractors who worked on the property informed him of any leaks, water damage, or mold. And, while living at the property, Mr. Cromer said that he never observed any water intrusion, water damage, or mold, and that he was not aware of any floods that affected the property. Mr. Cromer testified that he was unaware of any material defects or adverse facts pertaining to the property, and that he did not withhold or conceal any information from the SPD.

¶ 41    Sitting as the trier of fact, the court was within its discretion to weigh the credibility of witnesses, as well as the probative value of the evidence, and credit Mr. Cromer's testimony. *Deas v. Cronin*, 544 P.2d 991, 993 (Colo. 1976).

¶ 42     Because the evidence supports the trial court's order dismissing Dr. Brone's claims under Rule 41(b)(1), we cannot disturb its judgment.

## IV.    The Cromers' Request for Appellate Attorney Fees and Costs

¶ 43     The Cromers request appellate attorney fees and costs under C.A.R. 39.1 and C.R.C.P. 121, section 1-22.  Under these provisions, a party is entitled to recover the costs of attorney fees as determined by the express terms of the underlying contract.  The contract here provides that the court "must award to the prevailing party all reasonable costs and expenses, including attorney fees, legal fees and expenses."  Because the Cromers are the prevailing party in this litigation, we conclude that they are entitled to appellate attorney fees and costs under the contract.

## V.    Disposition

¶ 44     The judgment of the trial court is affirmed, and the case is remanded to the trial court to determine and award the Cromers their reasonable appellate attorney fees and costs.

JUDGE DUNN and JUDGE TOW concur.