David J. MINTZ, Plaintiff–Appellant and Cross–Appellee,

v.

ACCIDENT AND INJURY MEDICAL SPECIALISTS, PC; Nadler, Inc.; Elite Chiropractic Care, Inc.; Physical Therapy, Inc.; Myocare, Inc.; A Shi Acupuncture, Inc.; Comprehensive Diagnostic Services, Inc.; Mile High Medical Group, LLC; and Global Physician Services, P.C., Defendants–Appellees and Cross–Appellants.

No. 08CA1867.

Colorado Court of Appeals, Div. IV.

Nov. 10, 2010.

As Modified on Denial of Rehearing Feb. 24, 2011.

Springer and Steinberg, P.C., Jeffrey A. Springer, Michael P. Zwiebel, Denver, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Hill & Robbins, P.C., Ronald L. Wilcox, Nathan P. Flynn, Denver, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge HAWTHORNE.

In this bifurcated interpleader action, plaintiff, David J. Mintz, appeals the judgment entered for defendants, Accident and Injury Medical Specialists, PC, Nadler, Inc., Elite Chiropractic Care, Inc., Physical Therapy, Inc., Myocare, Inc., A Shi Acupuncture, Inc., Comprehensive Diagnostic Services, Inc., Mile High Medical Group, LLC, and Global Physician Services, P.C. (the providers), on their abuse of process and breach of fiduciary duty counterclaims. He also appeals the damages awarded to the providers on their abuse of process counterclaim. The providers cross-appeal the trial court's order denying their C.R.C.P. 59 post-judgment motion for additional attorney fees and prejudgment interest. The providers also request an attorney fees award in this appeal.

We reverse the judgment, including the damages award, and remand with instructions that the trial court enter judgment in Mintz's favor on the providers' counterclaims. We therefore do not address the providers' requests for attorney fees and prejudgment interest.

## I. Facts

Mintz is an attorney who represented thirty-seven clients in automobile accident cases. The providers treated these clients and were to be paid from the clients' settlement proceeds Mintz obtained. Mintz, however, withheld $130,186.79 from the providers, which he kept in his Colorado Lawyer Trust Account Foundation (COLTAF) account.

According to the providers, Mintz withheld the payments because of an unrelated dispute between them. Mintz and the providers jointly paid for advertising through an entity owned by Mintz's wife called "The Lawyer Connection," which referred injured persons to Mintz for legal services and referred them to the providers for medical services. The providers allege that Mintz had been demanding an extra fee of twenty percent of what the providers received for treating clients Mintz referred to them who did not come to him through The Lawyer Connection. The providers paid Mintz $41,000, but Mintz asserted that they owed him far more.

Mintz subsequently filed an interpleader complaint naming, as pertinent here, the thirty-seven client-patients and the nine providers as defendants. Mintz asserted in his complaint that he was concerned about potential multiple liability and conflicting claims if he were to distribute the money in his COLTAF account to either the providers or the clients. As grounds for refusing to distribute the money to the providers, the complaint alleged that the providers had overcharged the clients for treatments, failed to substantiate their bills, engaged in unnecessary and excessive treatment, and violated the Colorado Medical Practices Act and other health care practice laws.

In response to the interpleader, the providers asserted cross-claims against the clients for failing to pay their medical bills. The providers also filed counterclaims against Mintz, alleging abuse of process, breach of fiduciary duty, tortious interference with contract, and civil conspiracy.

The trial court bifurcated the case into two trials: the first trial was to determine who was entitled to the money in Mintz's COLTAF account by addressing Mintz's interpleader complaint and defendants' cross-claims, and the second trial was to resolve the providers' counterclaims against Mintz. After the first trial, the court ruled for the providers, making numerous well-supported findings. The court concluded that they were entitled to the $130,186.79 in Mintz's COLTAF account.

The court then held the second trial and found that Mintz abused the interpleader process and breached his fiduciary duties to the providers. However, the court found that the providers did not prove their tortious interference with contract or civil conspiracy counterclaims. As compensatory damages, the court awarded the providers their reasonable attorney fees and costs, totaling $284,050.09, plus $2,000 in punitive damages.

Mintz appeals, and the providers cross-appeal.

## II. Mintz's Contentions

### A. Abuse of Process

Mintz contends that the trial court erred in ruling that he abused the interpleader process. Because we conclude the record does not support the court's finding on the second element of the abuse of process tort, the improper use element, we agree.

### 1. Standard of Review

We review the trial court's factual findings under the clear error standard, deferring to the findings unless they are so clearly erroneous as to lack record support. *Levine v. Katz,* 192 P.3d 1008, 1012 (Colo.App.2006). However, we review its legal conclusions de novo. *Id.*

### 2. Legal Principles

The abuse of process tort arose to provide a remedy where the malicious prosecution

tort did not. *See* W.P. Keeton et al., *Prosser & Keeton on Torts* § 121, at 987 (5th ed. 1984) ("The action for malicious prosecution, whether it be permitted for criminal or civil proceedings, has failed to provide a remedy for a group of cases in which legal procedure has been set in motion in proper form, with probable cause and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed.").

■■■ The malicious prosecution tort addresses the situation where a person knowingly initiates baseless litigation. *See Hewitt v. Rice*, 119 P.3d 541, 544 (Colo.App.2004), *aff'd*, 154 P.3d 408 (Colo.2007); Keeton, § 121, at 871. In contrast, the abuse of process tort provides a remedy in situations where litigation is properly initiated, but is misused through an irregular, generally coercive act. *See Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo.App.2006) (seeking to accomplish coercive goal is misuse of process); *Am. Guar. & Liability Ins. Co. v. King*, 97 P.3d 161, 170 (Colo.App.2003) (same) (*King*); Keeton, § 121, at 897 ("Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish."); *see also* Joseph B. Maher, Comment, *Survival of the Common Law Abuse of Process Tort in the Face of a* Noerr–Pennington *Defense*, 65 U. Chi. L.Rev. 627, 640 (1998); Timothy P. Getzoff, Comment, *Dazed and Confused in Colorado: The Relationship Among Malicious Prosecution, Abuse of Process, and the* Noerr–Pennington *Doctrine*, 67 U. Colo. L.Rev. 675, 676, 700 (1996).

■■■ Accordingly, to prevail on an abuse of process claim, a plaintiff must prove the defendant (1) had an ulterior purpose in using a judicial proceeding; (2) used the proceeding in an improper manner by taking a willful action that was improper in the proceeding's regular course; and (3) caused damage. *See Walker*, 148 P.3d at 394; *Aztec Sound Corp. v. Western States Leasing Co.*, 32 Colo.App.

248, 252, 510 P.2d 897, 899 (1973); Keeton, § 121, at 871.

■■■ As to the first element, an ulterior purpose is one that the legal proceeding was not designed to accomplish. *See* Restatement (Second) of Torts § 682 cmt. b; *King*, 97 P.3d at 170–71. Usually, the ulterior purpose is to obtain an advantage in another matter to achieve the surrender of property or the payment of money. *Hertz v. Luzenac Group*, 576 F.3d 1103, 1118 (10th Cir.2009). However, there is no liability for abuse of process if the defendant's ulterior purpose was simply incidental to the proceeding's proper purpose. Restatement (Second) of Torts § 682 cmt. b ("[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.").

As to the second element, the "improper use" element, using a legal proceeding in an improper manner requires proof of a willful act by the defendant in using the process that is not proper in the proceeding's regular course. *King*, 97 P.3d at 170 (quoting Keeton, § 121, at 898). "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action...." *Inst. for Professional Development v. Regis College*, 536 F.Supp. 632, 635 (D.Colo.1982) (quoting 1 Am.Jur.2d *Abuse of Process* § 13 (1962)). Thus, the filing of a justified lawsuit cannot constitute the act necessary to sustain an abuse of process claim, even if the suit was filed for an ulterior purpose. *See id.*; 1 Am.Jur.2d *Abuse of Process* § 11; *cf.* 1 Am.Jur.2d *Abuse of Process* § 12 (no abuse of process for using discovery procedures justified in proceeding's regular course, even if used for an ulterior purpose; however, use of unjustified discovery for ulterior purpose is an abuse of process).

■■■ Moreover, although the improper act need not occur after process has been initiated, there must nevertheless be some improper act to conclude that one used the legal proceeding in an improper manner.

*See* Keeton, § 121, at 898 (rejecting suggestion that improper act must occur after process is initiated); *see also Simon v. Navon,* 71 F.3d 9, 15 (1st Cir.1995) (wrongful use of process does not have to occur after filing).

■ Finally, although the ulterior purpose may be inferred from the improper use of the process, the improper use may not be inferred from the purpose. *Inst. for Professional Development,* 536 F.Supp. at 635.

■ As to the third element, a defendant is only liable for abuse of process if his or her abuse caused damages to the plaintiff. *See Walker,* 148 P.3d at 394. Thus, mere vexation or frustration without demonstrable damage is insufficient to sustain liability. *See* 1 Am.Jur.2d *Abuse of Process* § 7; *see also Ion Equipment Corp. v. Nelson,* 110 Cal.App.3d 868, 876, 168 Cal.Rptr. 361, 364 (1980).

### 3. Analysis

■ Here, the trial court concluded that the providers satisfied each element of their abuse of process counterclaim by finding that (1) Mintz used the interpleader process for the ulterior purpose, or "personal goal," of "avoiding further liability to Attorney Regulation Counsel"; (2) Mintz used the interpleader process in an improper manner by manufacturing or otherwise generating the dispute forming the basis for the interpleader action; and (3) Mintz's actions caused the providers $284,050.09 in economic damages.

Mintz argues that the trial court's findings are erroneous for numerous reasons, but because we conclude that the court's finding on the second element, the improper use element, is contradicted by other findings made by the court and therefore not supported by the record, we address only that element.

As noted, the trial court found that Mintz used the interpleader process in an improper manner by manufacturing or otherwise generating the dispute forming the basis for the interpleader action. The providers assert that the record supports the court's finding because Mintz contacted the clients and financially supported investigating and prosecuting the claims. In their petition for rehearing, the providers also assert that the

record supports the court's manufacturing or generating finding because the court found that Mintz withheld for years in his COLTAF account money his clients had authorized for release to the providers.

However, even if we assume that Mintz's withholding money and investigating and prosecuting the interpleader support the court's manufacturing or generating finding, that finding is nevertheless undermined by the court's findings regarding the providers' billing irregularities. The trial court found in the first trial that "there is some serious doubt about the accuracy of the amounts that [were] billed" and found that the clients' testimony that they were billed for sessions they did not attend "cast doubt on the accuracy of the amounts that the medical providers are requesting." Likewise, in oral findings following the second trial, the trial court stated: "There were problems with billing. There were problems with rebilling; there were problems with over billing. Allstate thought that there was corporate practice of medicine happening. There were problems about whose names were on the documents. There was deceit on both sides."

These findings are inconsistent with the court's conclusions in the second trial that Mintz improperly manufactured or generated the dispute and that the interpleader did not address a reasonable or bona fide fear of multiple liability or conflicting claims against money held in Mintz's COLTAF trust accounts. Thus, because the court's findings indicate that Mintz's clients may have been overcharged or otherwise improperly billed, we conclude that it was not improper for Mintz to investigate the bills and prosecute the interpleader. *Cf.* Colo. RPC 1.4(a)(3), (b) ("(a) A lawyer shall: ... keep the client reasonably informed about the status of the matter ....; (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.").

Therefore, although the trial court found that Mintz had an ulterior purpose for filing the interpleader—namely, to "avoid[ ] further liability to Attorney Regulation Counsel"— his investigating and prosecuting the dispute do not constitute the improper act necessary

to satisfy the improper use element of the providers' abuse of process counterclaim. *See Inst. for Professional Development*, 536 F.Supp. at 635 ("If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action ...." (quoting 1 Am.Jur.2d *Abuse of Process* § 13)); *Walker*, 148 P.3d at 395–96 (no abuse of process where neighbors who filed complaints with animal control had not taken an improper action even though they may have had ulterior motives for filing complaints). Mintz's withholding money in his COLTAF account is also insufficient to constitute the improper act necessary to satisfy the improper use element because withholding money does not, by itself, involve the use of judicial process. *See Walker*, 148 P.3d at 394 (abuse of process requires, among other things, willful action in the *use of judicial process* that is improper in the proceeding's regular course).

Accordingly, although the trial court issued a well-reasoned opinion that properly differentiated the abuse of process elements, we reverse the judgment with respect to the abuse of process counterclaim because the court's findings regarding the billing irregularities preclude its improper act finding in the second trial. Without an improper act, there can be no improper use of process and therefore no abuse of process. *See id.*

### B. Fiduciary Duty

Mintz next contends that the trial court erred in entering judgment against him on the providers' breach of fiduciary duty claim. We agree.

#### 1. Standard of Review

■■■■ Whether a fiduciary relationship exists is generally a factual question; we thus review the factual finding for record support to determine if it is clearly erroneous. *See Levine*, 192 P.3d at 1012; *Moses v. Diocese of Colo.*, 863 P.2d 310, 322 (Colo. 1993); *Paine, Webber, Jackson & Curtis, Inc. v. Adams,* 718 P.2d 508, 516 (Colo.1986); *Elk River Assocs. v. Huskin*, 691 P.2d 1148, 1152 (Colo.App.1984). However, certain re-

lationships give rise to a fiduciary duty as a matter of law. *Moses*, 863 P.2d at 322 (Colo. 1993) (attorney-client); *Command Commc'ns, Inc. v. Fritz Cos.*, 36 P.3d 182, 186 (Colo.App.2001) (principal-agent); *Bailey v. Allstate Ins. Co.*, 844 P.2d 1336, 1339 (Colo.App.1992) (trustee-beneficiary); *Elk River*, 691 P.2d at 1152 (general partner-limited partner). We review de novo such legal determinations. *Elk River*, 691 P.2d at 1152. We also review de novo the legal questions concerning the fiduciary duty's nature and scope; but, whether a fiduciary duty has been breached is a factual question we review ·for clear error. *Command Commc'ns, Inc.*, 36 P.3d at 186.

#### 2. Legal Principles

■■■■ A fiduciary is a person who has undertaken a duty to act primarily for another's benefit in matters connected with the undertaking. *Brodeur v. American Home Assurance Co.*, 169 P.3d 139, 151 (Colo.2007). Thus, a fiduciary relationship exists between two persons when one of them has undertaken a duty to act for or to give advice for the benefit of another on matters within the relationship's scope. *Id.; Moses*, 863 P.2d at 321.

■■■■ A fiduciary relationship may exist as a legal matter because of the parties' relationship, or it may exist due to the superiority and influence that accompanies a repose of trust, confidence, and reliance. *Brodeur*, 169 P.3d at 151; *Moses*, 863 P.2d at 321; *Bailey*, 844 P.2d at 1339. However, an unequal or confidential relationship does not automatically create a fiduciary duty. *Brodeur*, 169 P.3d at 151; *Moses*, 863 P.2d at 322. Rather, the superior party must assume a duty to act in the dependent party's best interest. *Brodeur*, 169 P.3d at 151; *Moses*, 863 P.2d at 322.

■■■■ A fiduciary duty may also arise from relationships of blood, business, friendship, or association. *Moses*, 863 P.2d at 322. However, where the parties are engaged in an arm's-length business transaction without any special relationship of trust and confidence and without one party assuming a duty to act in the other party's best interest, a

fiduciary duty does not exist. *Biller Assocs. v. Peterken*, 269 Conn. 716, 849 A.2d 847, 852 (2004).

### 3. Analysis

 Here, the trial court found that Mintz was the trustee of his COLTAF trust account and was entrusted to act in the best interests of the account's beneficiaries, which included the medical providers. The court reasoned that Mintz owed the providers a fiduciary duty because trial testimony and exhibits showed that his dealings with the providers induced them to rely on his past practice of paying them for the patient's health care treatment from the patient's settlement proceeds.

However, contrary to the court's reasoning, reliance alone is not sufficient to create a fiduciary duty. Rather, as noted, the fiduciary also must assume a duty to act in the dependent party's best interest. *Brodeur*, 169 P.3d at 151; *Moses*, 863 P.2d at 322. Where a person has not undertaken a duty to act primarily for another's benefit in matters connected with the undertaking, the person is not a fiduciary. *See Brodeur*, 169 P.3d at 151. Here, the trial court did not find, and the record does not indicate, that Mintz undertook a duty to act primarily for the providers' benefit with respect to the patients' settlement proceeds held in his COLTAF account.

Moreover, to the extent the trial court concluded that the providers were beneficiaries of Mintz's COLTAF account, we disagree. The record indicates that the money in Mintz's COLTAF account was money the insurers had paid to Mintz for the patients' benefit and not the providers' benefit. Thus, the record does not show that the providers are beneficiaries of Mintz's COLTAF account.

In addition, the court did not find, and the record does not indicate, that Mintz was in a superior and influential position as to the providers. *See Brodeur*, 169 P.3d at 151; *cf. Moses*, 863 P.2d at 321–22 (fiduciary duty existed between priest and parishioner where priest knew parishioner was mentally unstable and priest, in a superior position, assumed duty to act in her best interest).

Rather, the record indicates that Mintz and the providers were engaged in arm's-length business transactions. *See Biller Assocs.*, 849 A.2d at 852.

Accordingly, the record does not support the trial court's finding that Mintz owed a fiduciary duty to the providers. *See Brodeur*, 169 P.3d at 151–52; *see also Biller Assocs.*, 849 A.2d at 853 ("a rule creating a fiduciary relationship between an attorney and a third party claiming an interest in the funds of the attorney's client would jeopardize a 'central dimension of the attorney-client relationship,' namely, the attorney's duty of undivided loyalty to his or her client" (quoting *Jackson v. R.G. Whipple, Inc.*, 225 Conn. 705, 627 A.2d 374, 385 (1993))).

Without a fiduciary duty, there can be no breach. *See Brodeur*, 169 P.3d at 152. Accordingly, we reverse the judgment with respect to the providers' breach of fiduciary duty counterclaim.

### III. Remaining Issues

Because we reverse the judgment on the providers' abuse of process and breach of fiduciary duty counterclaims, we do not address the providers' claims for additional attorney fees and prejudgment interest. *See Duran v. Industrial Claim Appeals Office*, 883 P.2d 477, 485 (Colo.1994) (appellate court does not address issues rendered moot by opinion).

The judgment is reversed, including the damages award, and the case is remanded with directions to enter judgment in Mintz's favor on the providers' counterclaims.

Judge DAILEY and Judge CARPARELLI concur.