COLORADO COURT OF APPEALS                                    **2016COA122**

Court of Appeals No. 15CA0206
City and County of Denver District Court No. 14CV32364
Honorable Robert L. McGahey, Jr., Judge

R. Parker Semler,

Plaintiff-Appellant,

v.

Bruce S. Hellerstein; Perfect Place, LLC; Bruce S. Hellerstein, CPA P.C.; Charles
Bewley; and Berenbaum Weinshienk, P.C.,

Defendants-Appellees.

ORDERS AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE ASHBY
Webb and Plank*, JJ., concur

Announced August 25, 2016

Semler and Associates, P.C., R. Parker Semler, Jeremy Goldblatt, Matthew
Nelson, Denver, Colorado, for Plaintiff-Appellant

Podoll & Podoll, P.C., Richard B. Podoll, Robert C. Podoll, Robert A. Kitsmiller,
Greenwood Village, Colorado, for Defendants-Appellees Bruce S. Hellerstein;
Perfect Place, LLC; and Bruce S. Hellerstein, CPA P.C.

Wheeler Trigg O'Donnell LLP, Carolyn J. Fairless, Denver, Colorado, for
Defendants-Appellees Charles Bewley; and Berenbaum Weinshienk, P.C.


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2015.

¶ 1     Plaintiff, R. Parker Semler, appeals from the trial court's order granting the motions to dismiss of defendants, Bruce S. Hellerstein; Perfect Place, LLC; Bruce S. Hellerstein, CPA P.C.; Charles Bewley; and Berenbaum Weinshienk, P.C., and denying Semler's motion to amend his complaint.  Semler also appeals from the trial court's denial of his motion for postjudgment relief and its award of attorney fees and costs in defendants' favor.  We affirm in part, reverse in part, and remand the case for further proceedings.

## I.  Background

¶ 2     Semler and Perfect Place are both members of the 1940 Blake Street Condominium Association (Association).  Hellerstein owns and controls both Perfect Place and Bruce S. Hellerstein, CPA P.C. (collectively, the Perfect Place defendants).  Hellerstein also served as treasurer of the Association when he allegedly committed the conduct discussed below.  Bewley is an attorney employed by the law firm of Berenbaum Weinshienk, P.C.  At all relevant times, Bewley represented Hellerstein and his two corporate entities.

¶ 3     The current litigation stems from a related quiet title action in which Perfect Place asked the court to determine that it was the rightful owner of parking spaces C, D, and E.  According to Semler,

1

he had acquired title to parking space C more than seven years before this litigation began. He also acquired title to parking space D through a deed of trust and for significant consideration. Perfect Place asserted that it had acquired title to parking spaces C, D, and E via a quitclaim deed from John Watson and two entities that Watson controlled in June 2011. The court presiding over the quiet title action determined that Semler owned parking spaces C and D, while Perfect Place owned parking space E.

¶ 4 Perfect Place appealed and that appeal is currently pending before another division of this court.

¶ 5 Semler then brought the current suit claiming that Bewley and Hellerstein devised a scheme to gain title to Semler's building parking spaces C and D. Semler alleged that Bewley and Hellerstein, through various misrepresentations made to Watson, induced Watson to sign deeds conveying Semler's parking spaces to Perfect Place. According to Semler, Hellerstein, as the treasurer of the Association, breached his fiduciary duty to Semler by scheming to take his parking spaces. Bewley, by representing Hellerstein, conspired with and helped Hellerstein in his efforts to improperly gain title to the parking spaces. And Berenbaum Weinshienk failed

to properly supervise Bewley, was vicariously liable for Bewley's conduct, and breached an agreement to not represent one Association member against another. Semler's first amended complaint alleged claims only for breach of fiduciary duty against Hellerstein, aiding and abetting that breach against Bewley, and civil conspiracy against all defendants.

¶ 6 Defendants filed two motions to dismiss, one based on C.R.C.P. 12(b)(5) and one based on a lack of standing. Soon thereafter, Semler moved to amend his complaint a second time, proposing to add claims for fraud, nondisclosure and concealment, negligent misrepresentation, negligent supervision, vicarious liability, and breach of contract. He also more clearly explained that he was seeking damages for the lost income opportunities he suffered as a result of having to defend against the quiet title action.[1]

---

[1] In his reply brief on appeal, Semler, for the first time, asserted damages based on his loss of use of the parking spaces and his inability to alienate them while the quiet title action is still pending. We decline to address these arguments as they were never presented to the trial court and have not been properly raised. *See People v. Williams,* 33 P.3d 1187, 1190 (Colo. App. 2001).

¶ 7    The court granted the motions to dismiss and denied Semler's

second motion to amend.  The court also awarded attorney fees in

favor of defendants.

## II.  Timeliness of the Notice of Appeal

¶ 8    Defendants assert that Semler's notice of appeal was untimely

and, therefore, we lack jurisdiction to consider the appeal.  We

disagree.

¶ 9    "The timely filing of a notice of appeal is a jurisdictional

prerequisite to appellate review."  *Estep v. People*, 753 P.2d 1241,

1246 (Colo. 1988).  Under C.A.R. 4(a), the notice of appeal must be

filed "within 49 days of the date of the entry of the judgment,

decree, or order from which the party appeals."

¶ 10   As relevant here, one method by which to calculate the

forty-nine-day period is from the date the court grants or denies a

Rule 59 motion.  C.A.R. 4(a).  Thus, "[t]he timely filing of a motion

pursuant to C.R.C.P. 59 tolls the time for filing a notice of appeal."

*Goodwin v. Homeland Cent. Ins. Co.*, 172 P.3d 938, 944 (Colo. App.

2007).

¶ 11   Nevertheless, defendants argue that because there was no trial

and Semler made the same arguments in his postjudgment motion

4

as he had in earlier pleadings, Semler's motion did not qualify as a C.R.C.P. 59 motion. They further argue that because Semler asked the court to vacate its orders of dismissal, the postjudgment motion could only be construed as a motion to vacate the judgment under C.R.C.P. 60. And, because a postjudgment motion pursuant to C.R.C.P. 60 does not toll the time within which to file a notice of appeal, Semler's appeal is untimely.

¶ 12    We find the out-of-state cases cited by defendants distinguishable,[2] follow those prior Colorado cases that construe motions such as Semler's — filed in cases that ended before a trial — as motions under C.R.C.P. 59, and conclude that this appeal is timely. *See SMLL, L.L.C. v. Daly*, 128 P.3d 266, 269 (Colo. App. 2005); *Small v. Gen. Motors Corp.*, 694 P.2d 374, 375 (Colo. App. 1984).

¶ 13    Here, the day after the court entered its order dismissing Semler's claims, Semler filed a motion for reconsideration pursuant to C.R.C.P. 59. The court denied the motion about one month later

---

[2] *See Hyde v. Anania*, 578 N.W.2d 647 (Iowa 1998); *Brown v. Brown*, No. 659, 1988 WL 36360, at *2 (Ohio Ct. App. Mar. 29, 1988); *Johnson v. Johnson*, 515 A.2d 960, 962 (Pa. Super. Ct. 1986).

on December 22, 2014.  Exactly forty-nine days later, on February 9, 2015, Semler filed his notice of appeal.  Therefore, we conclude the appeal was timely filed and that we do have jurisdiction to consider the appeal.

## III.  Motion to Amend Complaint

¶ 14     Semler contends that the trial court erred by denying his motion for leave to amend his complaint a second time.

¶ 15     We generally review a trial court's decision to grant or deny a motion to amend for an abuse of discretion.  *See Benton v. Adams*, 56 P.3d 81, 85 (Colo. 2002).  However, "[w]hen a trial court denies leave to amend on grounds that the amendment would be futile because it cannot survive a motion to dismiss, we review that question de novo as a matter of law."  *Id.*

¶ 16     Our courts favor a liberal policy toward amending pleadings.  Under C.R.C.P. 15(a), "where leave of court is required to amend a pleading, 'leave shall be freely given when justice so requires.'"  *Civil Serv. Comm'n v. Carney*, 97 P.3d 961, 966 (Colo. 2004) (quoting C.R.C.P. 15(a)).  In determining whether to grant leave, the court should consider the totality of the circumstances.  *Id.*  Some grounds for denying a motion to amend include "undue delay, bad

6

faith, dilatory motive, repeated failure to cure deficiencies in the pleadings via prior amendments, undue prejudice to the opposing party, and futility of amendment." *Benton*, 56 P.3d at 86.

¶ 17 Here, in its omnibus order dismissing the case, the trial court denied Semler's motion to amend his complaint (for the second time) but stated no basis for doing so other than articulating why Semler had no standing to pursue any alleged fraud against or misrepresentation to Watson, the prior owner of the parking spaces. And the court's dismissal of the action was specifically premised on Semler's fraud claims. These claims were not included in Semler's initial or amended complaint and were new to the second amended complaint. Therefore, it appears to us that even though the court denied Semler's motion to amend, it did in fact consider the second amended complaint when ruling on the motion to dismiss. Defendants acknowledge this in their answer brief.

¶ 18 We presume, therefore, that the court's denial of Semler's motion to amend was premised on its dismissal of the entire action and the futility of further proceedings. Thus, we will review the trial court's dismissal of the action based on Semler's second amended complaint.

7

## IV.  Standing

¶ 19    The trial court's order dismissing the action stated:

> [Semler] is not the victim of the alleged fraud that he claims occurred. . . .  [Semler] fails to offer any evidence to support this claim of misrepresentation, instead offering conclusory statements in his Complaint.  If Mr. Watson is the victim of fraud, then it is he who should sue the Association and/or the individuals for their role in the alleged misrepresentation. Due to lack of standing, the other legal issues addressed in Defendants' Motions are moot.

¶ 20    We review the trial court's decision regarding whether a plaintiff has standing de novo.  *Barber v. Ritter*, 196 P.3d 238, 245 (Colo. 2008).  To establish standing, the court must find that the plaintiff has suffered (1) an injury in fact (2) to a legally protected interest.  *Id.* at 245-46.  Both prongs must be met.  A plaintiff lacks standing to sue for injuries allegedly suffered by someone else.  *See Wimberly v. Ettenberg*, 194 Colo. 163, 168-69, 570 P.2d 535, 539 (1977); *see also Greenwood Vill. v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 439 (Colo. 2000) ("The third-party standing rule prevents a party from asserting the claims of third parties who are not involved in the lawsuit.").

¶ 21    Here the fraud, concealment, and misrepresentation claims are all premised on conversations and transactions between Watson and defendants.  Semler was not involved.  He asserts, however, that the fraudulent conduct was intended to cause damage to him — that is, to improperly acquire title to his parking spaces thereby depriving him of their use.  Even if we assume that Semler is correct and that he has standing to assert these fraud-based claims even though he was not the first-party victim of the fraud, we nonetheless affirm the trial court's dismissal of those claims.  *See Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo. App. 2004) (we may affirm the trial court's ruling on any grounds supported by the record).

¶ 22    Semler alleges that he suffered lost income opportunity damages as a result of defendants' fraudulent conduct because he was forced to litigate his right to the parking spaces and was unable to accept additional clients during that time.  To recover damages for fraudulent conduct, the damages must be a reasonably foreseeable consequence of the fraud.  *See* Restatement (Second) of Torts §§ 435A, 548A (Am. Law Inst. 1965); *see also Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 656-57 (2008).  We conclude that

9

Semler's claims for lost opportunity damages are too remote and unforeseeable to be recoverable. *See Bridge*, 553 U.S. at 658; *Roberts v. Holland & Hart*, 857 P.2d 492, 496-98 (Colo. App. 1993). While the possibility of litigation and the potential for attorney fees would have been foreseeable, the damages alleged here, which resulted from Semler representing himself and foregoing the opportunity to accept other clients, is too far removed from the alleged fraudulent conduct to have been foreseeable by defendants.

¶ 23    Accordingly, we conclude that these claims failed to state a claim upon which relief could be granted and should have been dismissed under C.R.C.P. 12(b)(5). The trial court's dismissal order, however, fails to address Semler's remaining, non-fraud-based claims. Thus, we address them each in turn.

## V.  C.R.C.P. 12(b)(5)

¶ 24    Because Semler's remaining claims assert conduct against him directly, the trial court's reasoning for dismissal based on lack of standing does not apply. And because we may affirm the trial court's order on any basis supported by the record, we analyze Semler's remaining claims under C.R.C.P. 12(b)(5). *See Rector v. City & Cty. of Denver*, 122 P.3d 1010, 1013 (Colo. App. 2005)

("When a trial court does not engage in the proper C.R.C.P. 12(b) analysis, a reviewing court need not remand if it can resolve the issue as a matter of law.").

¶ 25     Under C.R.C.P. 12(b)(5), a party may move to dismiss the other party's claims for "failure to state a claim upon which relief can be granted." The supreme court recently acknowledged a shift in how Colorado courts should assess C.R.C.P. 12(b) motions to dismiss, so that Colorado law is more closely aligned with the federal standards. *Warne v. Hall*, 2016 CO 50, ¶ 29 ("Although our opinion today does not result in an amendment to the language of our rules of procedure, it clearly signals a shift in the considerations according to which a motion to dismiss is to be evaluated and, therefore, a change in the terms in which a complaint may have to be expressed to avoid dismissal."). Under this standard, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at ¶ 9 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

¶ 26     In contrast, under the old standard, a plaintiff failed to state a claim upon which relief could be granted when "it appear[ed] beyond a doubt that a plaintiff [could] prove no set of facts in

11

support of her claim which would entitle her to relief." *Pub. Serv. Co. of Colo. v. Van Wyk*, 27 P.3d 377, 385-86 (Colo. 2001); *see also Dotson v. Bernstein*, 207 P.3d 911, 912 (Colo. App. 2009) ("A complaint may not be dismissed for failure to state a claim so long as the pleader is entitled to some relief upon any theory of law.").

¶ 27    *Warne* suggests that the new standard applies retroactively, and despite having been ordered to address this issue at oral argument, neither party argued to the contrary. However, even under the prior and more lenient "no set of facts" standard, we conclude that Semler has failed to state a claim for all but one of his claims, as discussed below.[3] Regardless, in reviewing Semler's claims under Rule 12(b)(5), we view all allegations in the complaint as true and in the light most favorable to the nonmoving party. *See Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010).

---

[3] Because under either the former, more lenient standard or the more stringent *Warne* standard the result would be the same, we reject Semler's request to remand and allow him to amend yet again in an effort to satisfy the new standard.

## A. Civil Conspiracy

¶ 28 Semler contends that defendants conspired with each other to obtain his parking spaces. We conclude as a matter of law that Semler is not entitled to relief on a civil conspiracy claim.

¶ 29 The elements of a civil conspiracy claim are "(1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006) (quoting *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989)).

¶ 30 It is a well-settled tenet of corporate law that a director cannot conspire with the corporation which he serves. *See, e.g., Pittman v. Larson Distrib. Co.*, 724 P.2d 1379, 1390 (Colo. App. 1986) ("A corporation and its employees do not constitute the 'two or more persons' required for a civil conspiracy, at least if the employees are acting on behalf of the corporation and not as individuals for their individual advantage.") (citations omitted). However, Semler claimed that "at all times relevant to the allegations" in his complaint, Bewley was the legal representative for and an agent of

Perfect Place and Hellerstein.[4]  And whether an attorney who is acting within the scope of his representation may conspire with his client is an issue of first impression in Colorado.

¶ 31    Other courts that have addressed the issue generally hold that an attorney acting within the scope of his employment cannot conspire with his client unless the attorney acted for his sole personal benefit.  *See, e.g., Farese v. Scherer*, 342 F.3d 1223, 1231 (11th Cir. 2003); *Heffernan v. Hunter*, 189 F.3d 405, 412-13 (3d Cir. 1999).  This limitation reflects that "[t]he right of a litigant to independent and zealous counsel is at the heart of our adversary system and, indeed, invokes constitutional concerns."  *Heffernan*, 189 F.3d at 413.  Further, "[c]ounsels' conduct within the scope of representation is regulated and enforced by disciplinary bodies established by the courts.  Abuses in litigation are punishable by sanctions administered by the courts in which the litigation occurs."  *Id.*

---

[4] The CPA firm, for which Hellerstein was the principal, was also referenced in the complaint as one of the "Perfect Place defendants" whom Semler claimed conspired to obtain ownership of the parking spaces.  All of these defendants were allegedly represented by Bewley.

14

¶ 32 Even so, other courts have recognized additional bases for a viable conspiracy claim, such as when the attorney engages in fraud.  *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002); *Marshall v. Fenstermacher*, 388 F. Supp. 2d 536, 553 (E.D. Pa. 2005); *see also Astarte, Inc. v. Pac. Indus. Sys., Inc.*, 865 F. Supp. 693, 708 (D. Colo. 1994); *Moore v. Weinberg*, 644 S.E.2d 740, 750 (S.C. Ct. App. 2007) ("[A]n attorney may be held liable for conspiracy where, in addition to representing his client, he breaches some independent duty to a third person.") (citation omitted), *aff'd*, 681 S.E.2d 875 (S.C. 2009).

¶ 33 Here however, as discussed in Part IV above, Semler has neither pleaded facts to support a fraud claim nor alleged that Bewley acted for his own personal gain or otherwise acted outside the scope of his legal representation.  *See Doherty v. Am. Motors Corp.*, 728 F.2d 334, 339-40 (6th Cir. 1984) (concluding that the plaintiff did not present any evidence proving the existence of a conspiracy between the defendant and the defendant's attorneys because the attorneys "were motivated not by personal concerns but by concerns for their clients").  To the contrary, Semler asserted that "at all times relevant" to the claims, Bewley was acting within

15

the scope of his representation of the Perfect Place defendants and his employment as an employee for defendant law firm Berenbaum Weinshienk. Thus, we leave for a different case the issue of deciding exactly what must be alleged to plead a viable claim against a lawyer for allegedly conspiring with the lawyer's client. *See Alexander v. Anstine*, 152 P.3d 497, 499 (Colo. 2007) ("Because Anstine lacked standing to bring the aiding and abetting claim against the attorney defendants, we do not reach the second issue regarding whether an attorney can be held liable for aiding and abetting a breach of fiduciary duty to a non-client, . . . thereby leaving this issue for another day.").

¶ 34    Therefore, we conclude that this allegation fails to state a claim upon which relief can be granted and should be dismissed.

## B.  Breach of Fiduciary Duty

¶ 35    Semler contends that Hellerstein, as treasurer of the Association, breached his fiduciary duty to Semler, a member of the Association, by engaging in self-serving and fraudulent conduct. We conclude that Semler has not stated such a claim.

¶ 36    Generally, determining the existence of a fiduciary duty is a question of fact; however, certain relationships may give rise to a

16

fiduciary duty as a matter of law. *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 68 (Colo. App. 2010), *aff'd*, 2012 CO 50. Thus, we review such determinations de novo. *Id.*; *see Command Commc'ns, Inc. v. Fritz Cos., Inc.*, 36 P.3d 182, 186 (Colo. App. 2001) ("The court determines as a matter of law the nature and scope of the duty owed by a fiduciary.").

¶ 37 "[A] fiduciary relationship exists between two persons when one of them has undertaken a duty to act for or to give advice for the benefit of another on matters within the relationship's scope." *Mintz*, 284 P.3d at 68. Thus, generally, a homeowners' association owes a fiduciary duty to its members. *McShane v. Stirling Ranch Prop. Owners Ass'n*, 2015 COA 48, ¶ 30 (*cert. granted* Jan. 11, 2016). And, "[u]nder section 38-33.3-303(2)(a), [C.R.S. 2015,] '[i]f appointed by the declarant, in the performance of their duties, the officers and members of the executive board are required to exercise the care required of fiduciaries of the unit owners.'" *Id.* (quoting § 38-33.3-303(2)(a)). Accordingly, much like officers of a corporation, the board members of a homeowners' association owe a fiduciary duty to both the association and its members. *See Michaelson v. Michaelson*, 939 P.2d 835, 841-42 (Colo. 1997); *Van*

*Schaack Holdings, Ltd. v. Van Schaack*, 867 P.2d 892, 897 (Colo. 1994).

¶ 38     This duty, however, is not all encompassing. When acting on behalf of the association or in their official capacity as board members, or when engaging in transactions involving the association but in their individual capacities, that fiduciary duty exists and the board members are bound by it. But, when engaged in transactions with other association members or with members of the public at large, where those transactions are not conducted on behalf of the association and do not involve the association, there exists no fiduciary duty. *See Mintz*, 284 P.3d at 68-69 ("[W]here the parties are engaged in an arm's-length business transaction without any special relationship of trust and confidence and without one party assuming a duty to act in the other party's best interest, a fiduciary duty does not exist.").

¶ 39     Here, Hellerstein was not acting in his role as treasurer when he engaged in the allegedly fraudulent conduct. And the Association was not involved in or affected by these transactions with Watson or Semler. Rather, these transactions involved individuals acting in their individual capacities and were unrelated

to the interests of the Association.  We are not persuaded that Hellerstein was bound by his fiduciary duties when acting wholly outside the scope of his board position.

¶ 40     Therefore, under the circumstances here, Hellerstein did not owe a fiduciary duty to Semler.  Accordingly, we conclude that Semler has failed to state a claim upon which relief can be granted.

### C.  Aiding and Abetting Breach of Fiduciary Duty

¶ 41     Semler contends that Bewley aided and abetted Hellerstein in breaching his fiduciary duty.  Because we have concluded that Hellerstein did not owe Semler a fiduciary duty under these circumstances, Bewley could not, as a matter of law, have aided and abetted him in breaching it.  Therefore, we conclude that Semler has failed to state a claim upon which relief can be granted.

### D.  Negligent Supervision

¶ 42     Semler contends that Bewley's law firm, Berenbaum Weinshienk, negligently supervised Bewley, which caused Semler to have to litigate his rights to the parking spaces in the quiet title action.  Again, we conclude that Semler has not stated a viable claim.

19

¶ 43    An employer may be directly liable for its negligent supervision of an employee where "(1) the defendant owed the plaintiff a legal duty to supervise others; (2) the defendant breached that duty; and (3) the breach of the duty caused the harm that resulted in damages to the plaintiff." *Settle v. Basinger*, 2013 COA 18, ¶ 23. To determine whether the employer owed a duty to a particular plaintiff, we consider "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor." *Id.* at ¶ 25.

¶ 44    The duty arises only where the employer has reason to know that the employee is likely to harm others "because of 'his [or her] qualities' and 'the work or instrumentalities entrusted to him [or her].'" *Id.* at ¶ 26 (quoting *Destefano v. Grabrian*, 763 P.2d 275, 287 (Colo. 1988)) (emphasis omitted); *see Keller v. Koca*, 111 P.3d 445, 450 (Colo. 2005) ("[I]n order for a duty of care to exist, there must be a connection between the employer's knowledge of the employee's dangerous propensities and the harm caused."). The connection between the employer's knowledge and the employee's

20

dangerous propensities is crucial to establishing a duty. *Keller*, 111 P.3d at 450.

¶ 45    For the reasons we have stated with respect to each claim thus far, Semler has not alleged any tortious conduct by Bewley, let alone conduct about which his employer knew and negligently failed to prevent. Therefore, we conclude that Semler has failed to state a claim upon which relief can be granted.

## E. Vicarious Liability

¶ 46    Semler also contends that Berenbaum Weinshienk is vicariously liable for the tortious acts of Bewley, who was, at all times, acting within the scope of his employment. We disagree.

¶ 47    Vicarious liability is a special form of secondary liability whereby an employer is liable for the torts of its employees when they are acting within the scope of their employment. *First Nat'l Bank of Durango v. Lyons*, 2015 COA 19, ¶ 36; *Stokes v. Denver Newspaper Agency, LLP*, 159 P.3d 691, 693 (Colo. App. 2006). In order to find the employer liable, the court must first find the employee liable. *See Arnold By & Through Valle v. Colo. State Hosp., Dep't of Insts.*, 910 P.2d 104, 107 (Colo. App. 1995).

¶ 48    Again, here, Semler has failed to allege any actionable tortious conduct committed by Bewley and, thus, there is no conduct for which Bewley's employer could be vicariously liable.

## F.  Breach of Contract

¶ 49    Finally, Semler contends that Berenbaum Weinshienk breached its contract with the Association by allowing Bewley to represent one Association member against another.

¶ 50    Semler alleges that the president of the Association "instructed Bewley that neither he nor Berenbaum Weinshienk was to represent the . . . Association against any member of the . . . Association or to represent one member . . . against another" and that Bewley agreed to those terms.  Based solely on the pleading allegations, we cannot conclude that this "instruction" was not a contract of which Semler was an intended beneficiary.

¶ 51    Generally, an individual who is not a party to the contract may not assert a claim for breach of that contract.  *See Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1056 (Colo. 1994).  One exception to this general rule, however, is in the case of third-party beneficiaries.  *See id.*; *Smith v. TCI Commc'ns, Inc.*, 981 P.2d 690, 693 (Colo. App. 1999).  "A third-party

beneficiary may enforce a contract only if the parties to that contract intended to confer a benefit on the third party when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to the third party." *Everett v. Dickinson & Co.*, 929 P.2d 10, 12 (Colo. App. 1996).

¶ 52　　Here, as a member of the Association, Semler is arguably a third-party beneficiary of this agreement between Bewley and the Association. From the facts Semler has alleged, the intent of any agreement may have been to protect Association members. However, this question may be illuminated by evidence once the case goes beyond the pleading stage. *See Parrish*, 874 P.2d at 1056 ("While the intent to benefit the non-party need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both.").

¶ 53　　We also conclude that *Baker v. Wood, Ris & Hames, Professional Corp.*, 2016 CO 5, does not require a different result. In *Baker*, the plaintiffs, devisees of a testator's estate, alleged that the attorney representing the testator had failed to properly advise the testator and the devisees (as intended third-party beneficiaries) thus frustrating the testator's intent to treat all devisees equally.

The supreme court reaffirmed the strict privity rule and held that an attorney's liability to a nonclient, for work performed on behalf of a client, is limited to "circumstances in which the attorney has committed fraud or a malicious or tortious act, including negligent misrepresentation." *Id.* at ¶ 35.

¶ 54 Unlike in *Baker*, Semler has not alleged in his breach of contract claim that the breach occurred because the legal work performed by Bewley for either the Association or the Perfect Place defendants was deficient. Instead, Semler alleges that Bewley's representation of the Perfect Place defendants in their attempt to acquire the parking spaces breached the contract between Bewley and the Association because those defendants' interests were adverse to Semler's. This difference undercuts the policy considerations identified in *Baker* as supporting the strict privity rule.

¶ 55 Therefore, we conclude that Semler has sufficiently pleaded a third-party beneficiary breach of contract claim under C.R.C.P. 12(b)(5). Accordingly, we remand the case to the trial court for further proceedings on this claim.

## VI.  Attorney Fees

¶ 56    Following its dismissal of Semler's action, the court awarded defendants their attorney fees under section 13-17-201, C.R.S. 2015.  Semler contends that if we reverse the dismissal order, this award must necessarily be reversed.  We agree in part.

¶ 57    Section 13-17-201 provides:

> In all actions brought as a result of . . . the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

An award for fees under this statute is appropriate where the entire action, not just some of the claims, is dismissed.  *See State v. Golden's Concrete Co.*, 962 P.2d 919, 925 (Colo. 1998); *Dubray v. Intertribal Bison Coop.*, 192 P.3d 604, 606-07 (Colo. App. 2008).  A division of this court has further concluded that the statute applies separately to each defendant.  *Smith v. Town of Snowmass Vill.*, 919 P.2d 868, 873-74 (Colo. App. 1996).  Thus, so long as all claims against a single defendant were dismissed, even though claims against other defendants may survive C.R.C.P. 12(b) motions, that defendant may recover under the statute.  *Id.*

¶ 58    Here, we have concluded that only Semler's breach of contract claim survives C.R.C.P. 12(b) dismissal.  Thus, because that claim was not pleaded against the Perfect Place defendants, we leave the attorney fees award to them undisturbed.  *See Jaffe v. City & Cty. of Denver*, 15 P.3d 806, 813-14 (Colo. App. 2000).  But the fees award under this statute to Bewley and Berenbaum Weinshienk cannot stand, and we reverse that portion of the court's order.  *See Sotelo v. Hutchens Trucking Co.*, 166 P.3d 285, 287 (Colo. App. 2007) ("[A] defendant may not recover attorney fees under § 13-17-201 when (1) the plaintiff's action includes both tort and nontort claims and (2) the defendant has obtained dismissal of the tort claims, but not of the nontort claims, under C.R.C.P. 12(b).").

## VII.  Appellate Attorney Fees

¶ 59    Berenbaum Weinshienk and Bewley have requested appellate attorney fees under C.A.R. 39.1.[5]  Because those defendants were only partially successful on appeal and because we have concluded that they are not entitled to their trial court attorney fees under section 13-17-201, we further conclude that they are not entitled to

---

[5] The Perfect Place defendants have not requested appellate attorney fees.

26

appellate attorney fees. *See In re Marriage of Roddy*, 2014 COA 96, ¶ 32; *Mullins v. Med. Lien Mgmt., Inc.*, 2013 COA 134, ¶ 58; *cf. Dubray*, 192 P.3d at 608.

## VIII. Conclusion

¶ 60    We affirm the trial court's order, albeit partially on different grounds, dismissing all of Semler's claims except as to his claim for breach of contract. We remand the case to the trial court for further proceedings on this claim alone. And we affirm the trial court's order awarding attorney fees to the Perfect Place defendants, but we reverse the award of attorney fees to the remaining defendants.

JUDGE WEBB and JUDGE PLANK concur.